UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NORMAN N. SHELTON, | : | |
| Plaintiff | : | No. 4:CV-11-0368 |
| | : | |
| vs. | : | (Judge Nealon) |
| | : | |
| WARDEN BLEDSOE, et al., | : | |
| | : | |
| Defendants | : | |

**FILED**
**SCRANTON**

FEB 1 4 2012

PER _Ṁ⸱ ⸱ ⸱_
**DEPUTY CLERK**

## MEMORANDUM

**Background**

On February 25, 2011, Norman N. Shelton, an inmate confined in the United States

Penitentiary, Lewisburg ("USP-Lewisburg"), Pennsylvania, filed the above-captioned Bivens[1]

action pursuant to 28 U.S.C. § 1331.  Named as Defendants are thirty-two (32) employees of USP-

Lewisburg.  Shelton raises claims of deliberate indifference to his safety and excessive use of force

with regard to events surrounding an alleged August 29, 2010 assault upon him by his cellmate, and

claims regarding his resulting medical care. (Doc. 1, complaint).  In addition, Shelton generally

alleges racial discrimination by staff and complains of various forms of mistreatment, including

"corporal punishment," the use of restraints, harassment, and being deprived of water, lights and

sleep.  Id.

Acting on a series of motions to amend/correct his complaint, the Court, by Order dated

June 30, 2011, permitted Shelton an opportunity to file an amended complaint.  See (Doc. 55).  To

that end, Shelton was provided with two copies of this Court's civil-rights complaint form.  Id.

---

1.  Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 397 (1971).

On July 11, 2011, Shelton filed two completed civil-rights complaint forms with the Court, both captioned with the docket number in this case. See (Docs. 58, 60). Along with the complaints, Shelton filed a brief in support of his amended complaints. (Doc. 59).

Om August 10, 2011, upon review of Shelton's amended complaint, the following Order was issued:

1. The Clerk of Court is directed to extract pages 1 - 4 from Plaintiff's first amended complaint (Doc. 58), consider them as the amended complaint of record, file and docket them as same.

2. The Clerk of Court is directed to return the remaining sixteen pages of the first amended complaint (Doc. 58) to the Plaintiff.

3. Plaintiff's amended complaint is permitted to proceed with respect to Defendants, Correctional Officers Raup and Whittaker, Lieutenants Heath and Galletta, and Medical Examiner Potter. The remainder of the Defendants are to be dismissed from the instant action.

4. The Clerk of Court is directed to serve Plaintiff's amended complaint on the five (5) Defendants named therein.

5. Plaintiff's second amended complaint (Doc. 60) is **STRICKEN** from the record as duplicative of the first three pages of Plaintiff's first amended complaint.

6. Defendants' motion for enlargement of time to respond to the amended complaint, (Doc. 61) is **GRANTED**.

7. Defendants may respond to the amended complaint within sixty (60) days after service of the amended complaint.

8. Defendants' motion to dismiss and motion for summary judgment, directed at Plaintiff's original complaint, (Doc. 42) is **DISMISSED** as moot.

9. Plaintiff's motion for default judgment (Doc. 50) and motion requesting issuance of subpoena (Doc. 62) are **DENIED**.

(Doc. 74, Order).

As a result of the Court's August 10, 2011 Order, the following claims contained in

Plaintiff's amended complaint (Doc. 58) were permitted to proceed:

> On August 30, 3009, [Plaintiff] was "forced to go into a cell with a gang member against [his] will". The gang member and [Plaintiff] "told the officials that it would not work out between [them]".

> On cell rotation of August 30, 2009, "[Plaintiff] was placed in handcuffs and inmate Graham #11510-031 began assaulting [Plaintiff] with multiple punches and kicks to [his] face and body".

> SMU officials stood there and watch for a whole three minutes and did nothing to stop it. Once inmate stopped, C/O Raup, C/O Whittaker and Lt. Heath came into the cell and "slammed [Plaintiff] to the ground while [he] was cuffed behind [his] back, after they sprayed [him] in the face with gas".

> Defendant Lt. Heath, "act[ing] intentionally and purposefully place[d] her knee on the back of Plaintiff's neck, cutting off his breathing".

> C/O Whittaker "slammed Plaintiff to the floor while Plaintiff was passively and handcuffed behind his back and Defendant Whittaker punched and kicked Plaintiff in his left side of his body."

> C/O Raup "punched [and] kicked Plaintiff in his right side of his body" and "Plaintiff could not breath and yelled he could not get any air." The gas was "burning Plaintiff's skin on his face, neck and back and Defendant C/O Raup stated we want you to suffer, we don't care if you can breath."

> Defendant Potter "witnesse[ed] Plaintiff's wounds that he sustained and the actual injury and the nature of his damages and refuse to give Plaintiff any medical care or medicine for the pain he was in."

> Lt. Galletta "attack[ed] and assault[ed] Plaintiff out of view of the surveillance tv, punched and slamm[ed] Plaintiff up against the wall" and "placing [him] in restraints."

(Doc. 58, Amended Complaint). For relief, Plaintiff seeks compensatory and punitive damages for

Defendants' "excessive use of force, denial of medical care" and "racial discrimination[2]." Id.

---

[2]Although Plaintiff's amended complaint seeks relief for racial discrimination, there

(continued...)

Presently before the Court are Plaintiff's motions for preliminary injunction (Docs. 16, 20) and temporary restraining order (Doc. 56), Plaintiff's motion for reconsideration (Doc. 77), the parties cross-motions for summary judgment (Docs. 96, 104), and Plaintiff's motion for appointment of counsel (Doc. 131). For the reasons set forth below the Court will deny Plaintiff's motions for reconsideration and summary judgment, grant Defendants' motion for summary judgment, and dismiss the remaining motions.

## I.   Motion for Reconsideration

A motion for reconsideration is a device of limited utility. It may be used only to seek remediation for manifest errors of law or fact or to present newly discovered evidence which, if discovered previously, might have affected the court's decision. Harsco Corp. v. Zlotnicki, 779 F.2d 906 (3d Cir. 1985), cert. denied, 476 U.S. 1171 (1986); Massachusetts Mutual Life Insurance Co. v. Maitland, Civil No. 87-0827 (M.D. Pa. March 1, 1989) (Rambo, J.). Accordingly, a party seeking reconsideration must demonstrate at least one of the following grounds prior to the court altering, or amending, a standing judgment: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. Max's Seafood Café v. Quineros, 176 F.3d 669, 677 (3d Cir. 1999), citing North River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995). A motion for reconsideration is appropriate in instances

---

[2](...continued)
are no allegations contained within the portion of Plaintiff's amended complaint that was permitted to proceed pursuant to this Court's August 10, 2011 Order. It appears that the prayer for relief for racial discrimination pertains to that portion of the amended complaint that was extracted and returned to Plaintiff. As such, it will not be addressed in the instant Memorandum.

where the court has "...misunderstood a party, or has made a decision outside the adversarial issues

presented to the Court by the parties, or has made an error not of reasoning, but of apprehension."

See Rohrbach v. AT & T Nassau Metals Corp., 902 F. Supp. 523, 527 (M.D. Pa. 1995), vacated in

part on other grounds on reconsideration 915 F. Supp. 712 (M.D. Pa. 1996), quoting Above the

Belt, Inc. v. Mel Bohannan Roofing, Inc., 99 F.R.D. 99, 101 (E.D. Va. 1983).  It may not be used as

a means to reargue unsuccessful theories, or argue new facts or issues that were not presented to the

court in the context of the matter previously decided.  Drysdale v. Woerth, 153 F. Supp. 2d 678,

682 (E.D. Pa. 2001).  "Because federal courts have a strong interest in the finality of judgments,

motions for reconsideration should be granted sparingly."  Continental Casualty Co. v. Diversified

Indus. Inc., 884 F. Supp. 937, 943 (E.D. Pa. 1995).

> A review of this Court's August 10, 2011 Order reveals that the following was concluded:

> On July 11, 2011, Shelton filed two completed civil-rights complaint forms with the Court, both captioned with the docket number in this case. (See Docs. 58, 60). Along with the complaints, Shelton filed a brief in support of his amended complaints. (Doc. 59).

> A review of Plaintiff's amended complaints reveals that Plaintiff's second amended complaint, (Doc. 60) is a duplicate copy of the first three pages of Plaintiff's first amended complaint (Doc. 58).  Thus, Plaintiff's second amended complaint (Doc. 60) will be stricken from the record as duplicative.

> With respect to Plaintiff's first amended complaint, (Doc. 58), the Court finds that a majority of this document does not satisfy the requirements of Federal Rule of Civil Procedure 8(a) and Federal Rule of Civil Procedure 20(a).  While the first four pages of Plaintiff's first amended complaint sets forth allegations surrounding the August 30, 2009 incident, the next sixteen pages relate to incidents that occurred subsequent to the August 30, 2009 assault, and are not directly connected to the facts which form the basis of the original complaint.

> Rule 8(a) requires that a plaintiff provide a "short, plain statement" of his claims. As the word "Rule" implies, Rule 8 is not merely aspirational; if a complaint does not comply with the Rule, it may be stricken. See Nagel v. Pocono Med. Ctr., 168

F.R.D. 22, 23 (M.D.Pa.1996) (citing Simmons v. Abruzzo, 49 F.3d 83, 86 (2d Cir.1995)).

Plaintiff's first amended complaint is twenty (20) pages long, incorporates thirty-one[3] of the originally named thirty-two Defendants, and consists of twenty-seven (27) paragraphs that concern events unrelated to the original complaint. While it is clear from the first four pages of the first amended complaint that Shelton is asserting Eighth Amendment claims of failure to protect, excessive force and denial of medical treatment, the remainder of the first amended complaint alleges many new causes of action against many of the Defendants. Thus, Shelton is attempting to join various Defendants, related or not, in one lawsuit. This violates Fed.R.Civ.P. 20(a).

Rule 20 sets forth the proper test for determining whether parties are properly joined in an action. In pertinent part, the Rule provides:
(a) Permissive Joinder. All persons ... may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or **arising out of the same transaction, occurrence, or series of transactions or occurrences** and if any question of law or fact common to all defendants will arise in the action. A plaintiff or defendant need not be interested in obtaining or defending against all the relief demanded. Judgment may be given for one or more of the plaintiffs according to their respective rights to relief, and against one or more defendants according to their respective liabilities.

Fed.R.Civ.P. 20(a)(emphasis added). Courts have broad discretion in applying Rule 20 to reduce inconvenience, delay, and added expense to the parties and to the court, and to promote judicial economy. 7 Charles Alan Wright et al., Federal Practice and Procedure § 1653 at 410-12 (3d ed.2001). The Court finds the latter sixteen pages of Plaintiff's first amended complaint violate Rule 20, as they constitute new causes of actions involving persons not involved in the allegations of the original complaint. As such, pages five through twenty-one, as filed, will be extracted from first amended complaint, stricken from the record, and returned to Plaintiff.

Meanwhile, the first four pages of Plaintiffs' first amended complaint will proceed as Plaintiff's amended complaint of record. (See Doc. 58, pp. 1-4, as filed). The amended complaint will proceed against only those Defendants named within the first four pages of Plaintiff's first amended complaint; specifically, Correctional Officers Raup and Whittaker, Lieutenants Heath and Galletta, and Medical Examiner Potter. The remainder of the Defendants will be dismissed from the instant action.

---

[3]Plaintiff seeks to remove Correctional Office Moffat from his amended complaint. (See Doc. 58, amended complaint).

(Doc. 74, Order).

Plaintiff's motion for reconsideration fails to demonstrate that there has been an intervening change in the law, that there is newly discovered evidence, or that there has been a clear error of law or manifest injustice committed.  Plaintiff simply requests that this Court reconsider its decision to strike the last sixteen (16) pages of his amended complaint and to strike all but five (5) of the defendants. (Doc. 77, motion for reconsideration).  His only argument in support of his request consists of vague allegations of recent improper behavior (i.e., harassment and retaliation) by unspecified dismissed Defendants.  He specifically argues that Defendants Bledsoe, Young, Trate, Hudson and Perrin should be reinstated as Defendants because several months after the August 30, 2009 incident, these Defendants again placed him in a cell with a gang member "who jumped him from behind." Id.

This Court has already determined that such allegations allege new causes of action against persons not involved in the allegations of the original complaint.  (Doc. 74 at 3-4).  Accordingly, this Court finds that its Order of August 10, 2011, is not troubled by manifest errors of law or fact and Plaintiff has not presented anything new, which if previously presented, might have affected this Court's decision. Consequently, the motion for reconsideration will be denied.

## II.   **Standards of Review**

### A. **Bivens Standard**

Plaintiff's claims are filed pursuant to 28 U.S.C. § 1331, in accordance with <u>Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics</u>, 403 U.S. 388, (1971).  Under <u>Bivens</u>, the District Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 to entertain an action brought to redress alleged federal constitutional or statutory violations by a federal actor. <u>Id.</u>

Pursuant to <u>Bivens</u>, "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal question jurisdiction of the district court to obtain an award of monetary damages against the responsible federal official." <u>Butz v. Economou</u>, 438 U.S. 478, 504 (1978). A <u>Bivens</u>-style civil rights claim is the federal equivalent of an action brought pursuant to 42 U.S.C. § 1983 and the same legal principles have been held to apply. <u>See</u> <u>Paton v. LaPrade</u>, 524 F.2d 862, 871 (3d Cir. 1975); <u>Veteto v. Miller</u>, 829 F. Supp. 1486, 1492 (M.D. Pa. 1992); <u>Young v. Keohane</u>, 809 F.Supp. 1185, 1200 n.16 (M.D. Pa. 1992). In order to state an actionable <u>Bivens</u> claim, a plaintiff must allege that a person has deprived him of a federal right, and that the person who caused the deprivation acted under color of federal law. <u>See</u> <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988); <u>Young v. Keohane</u>, 809 F. Supp. 1185, 1199 (M.D. Pa. 1992); <u>Sharpe v. Costello</u>, 2007 WL 1098964, *3 (M.D. Pa. 2007).

### B. Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); <u>see also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986) (emphasis in original).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. <u>Anderson</u>, 477 U.S. at 248; <u>Gray v. York Newspapers, Inc.</u>, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party. <u>Anderson</u>, 477 U.S. at 257; <u>Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America</u>, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. <u>Moore v. Tartler</u>, 986 F.2d 682 (3d Cir. 1993); <u>Clement v. Consolidated Rail Corporation</u>, 963 F.2d 599, 600 (3d Cir. 1992); <u>White v. Westinghouse Electric Company</u>, 862 F.2d 56, 59 (3d Cir. 1988). In order to avoid summary judgment, however, parties may not rely on unsubstantiated allegations. Parties seeking to establish that a fact is or is not genuinely disputed must support such an assertion by "citing to particular parts of materials in the record," by showing that an adverse party's factual assertion lacks support from cited materials, or demonstrating that a factual assertion is unsupportable by admissible evidence. FED. R. CIV. P. 56(c)(1); <u>see</u> <u>Celotex</u>, 477 U.S. at 324 (requiring evidentiary support for factual assertions made in response to summary judgment). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio</u>, 475 U.S. 574, 586 (1986). Parties must produce evidence to show the existence of every element essential to its case that they bear the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." <u>Celotex</u>, 477 U .S. at 323; <u>see</u> <u>Harter v. G.A.F. Corp.</u>, 967 F.2d 846, 851 (3d Cir. 1992). Failure to properly support or contest an assertion of fact may result in the fact being considered undisputed for the purpose of the motion, although a court may also give parties an opportunity to properly provide support or opposition. FED. R. CIV. P. 56(e).

-9-

## III.   Statement of Facts

From the pleadings, declarations, and exhibits submitted therewith, the following facts can

be ascertained as undisputed.

USP-Lewisburg Daily Assignment Roster indicates that on August 30, 2009, Officer Raup

was assigned to the Z block, third floor No. 2 post; Officer Whittaker was assigned to the Z block,

second floor No. 2 post; Lt. Heath was working the SIS Lieutenant No. 2 post; Lt. Galletta was the

West Side Lieutenant; and EMT Potter was the medical staff working the day watch shift.  (Doc.

124, Ex. 1, Att. B, Daily Assignment Roster).

On August 30, 2009, at approximately 12:33 pm, Defendants Raup and Whittaker were

conducting mandatory 21-day cell rotations on the first floor of Z-Block.  (Doc. 124, Ex. 1, Att. C,

Raup Memorandum and Incident Report).  Specifically, staff was moving cell 122 when hand

restraints were placed on inmate Shelton #45969-066 and he was immediately assaulted by inmate

Graham # 11510-031.  Id.  Z-Block first floor staff called for assistance at cell #122 and inmate

Graham was given several orders to stop and cuff up, which he refused.  Id.

Upon the arrival of the East Lieutenant J. Benfer and additional staff, the inmates were

ordered to separate and submit to hand restraints to which they complied.  (Doc. 124, Ex. 1, Att. C,

J. Benfer Memorandum and Form 583 Report of Incident, Section 6: Description of Incident).

Officer Raup gave inmate Shelton a direct order to move to the back wall and turn around, and not

move, which he did.  (Doc. 124, Ex. 1, Att. C, Raup Memorandum ).  With sufficient staff present,

Lt. Benfer then ordered the cell door to #122 be opened.  (Doc. 124, Ex. 1, Att. C, J. Benfer

Memorandum and Form 583 Report of Incident, Section 6: Description of Incident).  When the

door opened, inmate Shelton turned around, charged the door, and attempted to kick inmate

-10-

Graham and surrounding staff. (Doc. 124, Ex. 1, Att. C, R. Raup Memorandum and Form 583 Report of Incident, Section 6: Description of Incident). Lieutenant J. Benfer deployed a two second burst with a MK-09 OC Streamer at the facial area of inmate Shelton to stop the attempted assault. (Doc. 124, Ex. 1, Att. C, J. Benfer Memorandum.). Lieutenant Benfer ordered Inmate Shelton to lay on the ground, but he refused. Id. The Activities Lieutenant Jordan attempted to deploy three rounds from a pepper ball launcher, but the delivery system malfunctioned. (Doc. 124, Ex. 1, Att. C, A. Jordan Memorandum). Staff then entered the cell and placed inmate Shelton on the ground to regain control of him. (Doc. 124, Ex. 1, Att. C, J. Benfer Memorandum and Form 583 Report of Incident, Section 6: Description of Incident). Inmate Shelton was removed from the cell, decontaminated, and medically assessed. Id.

At 1:25 p.m., EMT Potter conducted an injury assessment of Inmate Shelton. (Doc. 124, Ex. 1, Att. C, Bureau of Prisons Health Services Clinical Encounter - Administrative Note). Shelton was found to have sustained a split lower lip on the inside and right side of the mouth, minor swelling on the right cheek by mouth, and minor abrasions to both knees. Id. There were no significant findings reported. Id. Shelton's wounds were cleaned and a tetanus injection was offered. Id.

A.    **Eighth Amendment Failure to Protect Claim**

The Eighth Amendment's prohibition against the infliction of cruel and unusual punishment has been interpreted to impose upon prison officials a duty to take reasonable measures "'to protect prisoners from violence at the hands of other prisoners.'" Hamilton v. Leavy, 117 F.3d 742, 746 (3d Cir. 1997) (quoting Farmer v. Brennan, 511 U.S. 825, 833 (1994)). Although, "[i]t is not . . . every injury suffered by one prisoner at the hands of another that translates into constitutional

liability for prison officials responsible for a victim's safety," "[b]eing violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" Farmer, 511 U.S. at 834 (quoting Rhodes v. Chapman, 452 U.S. 337, 345 (1981)).  A plaintiff, however, must prove more than that he had a fight with another inmate, see Beard v. Lockhart, 716 F.2d 544, 545 (8th Cir. 1983), and mere negligent conduct that leads to serious injury of a prisoner by a prisoner does not expose a prison official to liability under § 1983.  Davidson v. Cannon, 474 U.S. 344, 347-48 (1986).  To succeed, a prisoner must show that: (1) he was incarcerated under conditions posing a substantial risk of serious harm; (2) the defendant was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists"; (3) the defendant actually drew this inference; and (4) the defendant deliberately disregarded the apparent risk. Farmer, 511 U.S. at 834-37.

In determining whether a defendant was deliberately indifferent, the court must "focus [on] what a defendant's mental attitude actually was (or is), rather than what it should have been (or should be)."  Hamilton, 117 F.3d at 747.  It is not an objective test for deliberate indifference; rather, the court must look to what the prison official actually knew, rather than what a reasonable official in his position should have known.  "A prison official's knowledge of a substantial risk is a question of fact and can, of course, be proved by circumstantial evidence."  Id.  In other words, it may be concluded that a prison official knew of a substantial risk from the very fact that the risk was obvious.  The Farmer Court explained in hypothetical terms the type of circumstantial evidence sufficient for a finding of actual knowledge on the part of a prison official:

> [I]f an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was 'longstanding, pervasive, well-documented, or expressly noted by prison officials in the past,' and

-12-

> the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk.

Farmer, 511 U.S. at 842-43.

Thus, in order to survive Defendants' summary judgment motion, Shelton was obligated to produce sufficient evidence to support the inference that Defendants "'knowingly and unreasonably disregarded an objectively intolerable risk of harm.'" Beers-Capitol v. Whetzel, 256 F.3d 120, 132 (3d Cir. 2001). It is not enough to assert that a defendant should have recognized the risk; the evidence must be sufficient to support the inference that "the defendant must have recognized the excessive risk and ignored it." Id. at 138.

There is no evidence in the record that the Defendants ever obtained any knowledge or awareness from Shelton that Graham posed any substantial risk to his safety. Plaintiff's only allegation is that Defendants forced him to go into a cell with Inmate Graham even though he told staff that "it would not work out" between them. (Doc. 58, Amended Complaint). However, Shelton's allegation, without more, is insufficient to give Defendants notice that Shelton faced a substantial risk of harm. At no time did Shelton ever express any concern about Graham to any prison official. Shelton does not allege that inmate Graham threatened him in any way before they were celled together or that they had any history of ill will between them. He simply alleges that inmate Graham was a gang member and he told staff that it would not work out.

Accordingly, the record lacks sufficient evidence to establish that Defendants knew or were aware of and disregarded a substantial risk to Shelton's health or safety. There is no evidence in the record which would create a material issue of fact with regard to whether Defendants had the

-13-

requisite level of knowledge or awareness necessary to impose liability under the Eighth

Amendment.  Nor is there evidence from which it could be inferred that Graham posed a risk of

harm to Shelton.  Summary judgment is warranted in favor of Defendants.

Likewise, Plaintiff's claim that staff stood by and watched him being assaulted for three

minutes before intervening fails to sufficiently state an Eighth Amendment violation.

> When the ever-present potential for violent confrontation and conflagration ripens
> into actual unrest and conflict, the admonition that a prison's internal security is
> peculiarly a matter normally left to the discretion of prison administrators carries
> special weight.  Prison administrators should be accorded wide-ranging deference in
> the adoption and execution of policies and practices that in their judgment are
> needed to preserve internal order and discipline and to maintain institutional
> security. That deference extends to a prison security measure taken in response to an
> actual confrontation with riotous inmates, just as it does to prophylactic or
> preventive measures intended to reduce the incidence of these or any other breaches
> of prison discipline. It does not insulate from review actions taken in bad faith and
> for no legitimate purpose, but it requires that neither judge nor jury freely substitute
> their judgment for that of officials who have made a considered choice.
> Accordingly, ..., courts must determine whether the evidence goes beyond a mere
> dispute over the reasonableness of a particular use of force or the existence of
> arguably superior alternatives. Unless it appears that the evidence, viewed in the
> light most favorable to the plaintiff, will support a reliable inference of wantonness
> in the infliction of pain under the standard we have described, the case should not go
> to the jury.

Whitley v. Albers, 475 U.S. 312, 321-322 (1986) (internal quotations and citations omitted).  The

restriction on cruel and unusual punishment contained in the Eighth Amendment, however, reaches

non-intervention just as readily as it reaches the more demonstrable brutality of those who

unjustifiably and excessively employ fists, boots or clubs.  Smith v. Mensinger, 293 F.3d 641, 651

(3d Cir. 2002).  A corrections officer's failure to intervene in a beating can be the basis of liability

for an Eighth Amendment violation if the corrections officer had a reasonable opportunity to

intervene and failed to do so.  Id. at 650; see also, Urrutia v. Harrisburg County Police Dept., 91

-14-

F.3d 451, 456 (3d Cir. 1996) (noting that deliberate indifference standard should apply to claims that prison officials failed to protect inmate from violent attack whether or not the attack comes from another inmate).

The record evidence reveals that the staff who were present when inmate Graham assaulted Shelton did not simply stand and watch, but repeatedly ordered inmate Graham to cease and submit to restraints, which inmate Graham ignored.  The decision was then made by Lt. Benfer to not enter the cell until sufficient staff was present to gain control over the two inmates.  See (Doc. 124,  Ex. 1, Att. C, J. Benfer Memorandum and Form 583 Report of Incident, Section 6: Description of Incident).  According to Plaintiff, this whole situation occurred within three minutes.  (Doc. 58, Amended Complaint).  This is precisely the type of prison security matter where courts have recognized that they must defer to the experience and judgment of prison officials.  See Whitley v. Albers, 475 U.S. at 320 (1986); Hudson v. McMillian, 503 U.S. 1, 6 (1992) (recognizing that "officials confronted with a prison disturbance must balance the threat unrest poses to inmates, prison workers, administrators, and visitors against the harm inmates may suffer if guards use force. . . . and must determine what action to take 'in haste, under pressure, and frequently without the luxury of a second chance.'") (quoting Whitley v. Albers, 475 U.S. at 320)).  As such, this Court finds that the decision to wait until additional staff were present before opening the cell door and attempting to gain control over inmate Graham was not an act of deliberate indifference to Shelton's safety, but a cautious approach to a dangerous situation.  Consequently, the record fails to support an Eighth Amendment claim of deliberate indifference to Shelton's safety.

**B.**     **Eighth Amendment Excessive Use of Force**

Whenever prison officials are accused of using excessive force in violation of the Eighth Amendment the inquiry "is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7, (1992). The following factors are relevant in determining if the force was applied in a good faith effort to restore discipline or maliciously and sadistically to cause harm: the extent of the injury suffered; the need for the application of the force; the relationship between that need and the amount of force used; the threat reasonably perceived by the official; and any efforts made to temper the severity of a forceful response. Id. Although the extent of injury suffered is a consideration that may be relevant to determining if the force could have plausibly been thought necessary, to prove an Eighth Amendment excessive use of force claim an inmate does not need to show that he suffered a serious injury. Id.

In Hudson, the Supreme Court noted that not every malevolent touch by a prison guard gives rise to an Eighth Amendment cause of action. 503 U.S. at 9. "The Eighth Amendment's prohibition of 'cruel and unusual' punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" Id. at 9-10. Hudson testified that he was punched in the mouth, eyes, chest and stomach, and that he was kicked and punched from behind. Id. at 4. The Court stated that the blows directed at Hudson were not *de minimis* for Eighth Amendment purposes. Id. at 10.

The record evidence reveals that although Graham initially attacked Shelton, once the cell door was opened and Defendants began to remove Graham, it was Shelton who rushed inmate Graham and attempted to kick him. See (Doc. 124, Ex. 1, Att. C, J. Benfer Memorandum and Form 583 Report of Incident, Section 6: Description of Incident). At this point, Lieutenant Benfer

deployed a two second burst with an MK-09, OC streamer to Shelton's facial area and ordered him

to the back of the cell on the ground. Id. Although ordered to the ground, Shelton did not comply.

Id. Lieutenant Jordan then attempted to deploy three rounds from a pepper ball launcher, but the

delivery system malfunctioned. (Doc. 124, Ex. 1, Att. C, A. Jordan Memorandum). Staff entered

the cell and placed inmate Shelton on the ground to regain control of him. (Doc. 124, Ex. 1, Att. C,

J. Benfer Memorandum and Form 583 Report of Incident, Section 6: Description of Incident).

Inmate Shelton was then removed from the cell. Id.

Plaintiff, in no way, refutes the documentation submitted by Defendants. In opposition to

Defendants' evidence of the events of that day, Plaintiff submits his own affidavit. See (Doc. 127-

1, Declaration in Opposition to Defendants' Motion for Summary Judgment). Plaintiff's affidavit,

however, merely reiterates those allegations contained within Plaintiff's amended complaint. He

does not deny he rushed inmate Graham and kicked him or that he refused an order stay on the

ground, and he provides no evidence which would support a conclusion that the use of force against

Shelton was anything other than staff using the minimal amount of force necessary to regain control

of him. See (Id.). Thus, Plaintiff's excessive force claim is based on conclusory assertions,

unsupported by any evidence in the record indicating that the Defendants were personally involved

in the excessive use of force.

The Third Circuit Court of Appeals has specified that at the summary judgment phase of the

case, a claim fails as a matter of law if it is based only on the Plaintiff's unsupported allegations.

See Jones v. UPS, 214 F.3d 402, 407 (3d Cir. 2000) (holding that "[a]t summary judgment, a

plaintiff cannot rely on unsupported allegations, but must go beyond pleadings and provide some

evidence that would show that there exists a genuine issue for trial."); see also Diaz v. Palakovich,

2009 WL 811712 *5 (M.D. Pa. 2009) (following Jones, 214 F.3d 402 and stating that "at the summary judgment stage, the conclusory allegations of the Complaint, without evidentiary support, may be disregarded").

Consequently, given the uncontested evidence that chemical agents and force to subdue a hostile situation were used after Plaintiff refused to accept an order, it is clear that Plaintiff has failed to allege facts from which a reasonable inference can be drawn that the Defendants authorized the use of chemical agents and force maliciously and sadistically to cause harm rather than in a good faith effort to restore discipline. Accordingly, Defendants' are entitled to summary judgment.

C.   **Eighth Amendment Failure to Provide Adequate Medical Care**

In order to establish an Eighth Amendment medical claim, a plaintiff must show "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Natale v. Camden Cty. Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003). See also Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).  A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a layperson would recognize the need for a doctor's attention. Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).  In addition, "if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." Id. (quotation and citation omitted).

A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must

-18-

both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Thus, a complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment..." Estelle v. Gamble, 429 U.S. 97, 106 (1976).  For instance, a "medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice." Id., 429 U.S. at 107. "[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990).  Further, a doctor's disagreement with the professional judgment of another doctor is not actionable under the Eighth Amendment. See White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990).  In sum, negligence, unsuccessful medical treatment, or medical malpractice does not give rise to a § 1983 cause of action, and an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference. See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993).

Further, a prison administrator cannot be found deliberately indifferent under the Eighth Amendment because he or she fails to respond to the medical complaints of an inmate being treated by a prison physician, or because, as non-physicians, they defer to the medical judgment of the inmate's treating physicians. Id. at 69.  If, however, non-medical prison personnel had "a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner," liability may be imposed. Spruill, 372 F.3d 236.

A mere difference of opinion between the prison's medical staff and the inmate regarding the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual

-19-

punishment. <u>Farmer v. Carlson</u>, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988). <u>See</u> <u>McCracken v.</u>

<u>Jones</u>, 562 F.2d 22, 24 (10th Cir. 1977); <u>Smart v. Villar</u>, 547 F.2d 112, 113 (10th Cir. 1976), <u>cert.</u>

<u>denied</u>, 450 U.S. 1041 (1981).

Additionally, if there is a dispute over the adequacy of the received treatment, courts have

consistently been reluctant to second guess the medical judgment of the attending physician. <u>Little</u>

<u>v. Lycoming County</u>, 912 F. Supp. 809, 815 (M.D. Pa.), <u>aff'd</u> 101 F.3d 691 (3d Cir. 1996). The key

question is whether the defendant has provided the plaintiff with some type of treatment, regardless

of whether it is what the plaintiff desires. <u>Farmer</u>, 685 F. Supp. at 1339.

The only allegation made by Plaintiff regarding medical care is that "Defendant Potter,

medical examiner, witnessed Plaintiff's wounds that he sustained and the actual injury and the

nature of his damages and refuse [sic] to give Plaintiff any medical care or any medicine for the

pain he was in." (Doc. 58, Amended Complaint). Plaintiff provides no further evidence in support

of his claim.

However, the documentation submitted by Defendants clearly demonstrates that Plaintiff

received medical attention, as well as treatment for his injuries, and that the attention Plaintiff

received lacks the requisite deliberate indifference to support a Section 1983 claim. Immediately

after the assault, Plaintiff was placed in a first floor holding cell, where EMT Potter conducted an

injury assessment. (Doc. 124, Ex. 1, Att. C, Potter Memorandum and Bureau of Prisons Health

Services Clinical Encounter - Administrative Note). Shelton was found to have sustained a split

lower lip on the inside and right side of the mouth, minor swelling on the right cheek by mouth, and

minor abrasions to both knees. <u>Id</u>. There were no significant findings reported. <u>Id</u>. Shelton's

wounds were cleaned and a tetanus injection was offered. <u>Id</u>.

The record evidence establishes meaningful efforts by the Defendants to provide Plaintiff with necessary medical care and an attendant mental state that falls woefully short of deliberate indifference. Accordingly, Defendants' uncontroverted evidence demonstrates that the scope and quality of medical attention provided precludes a finding of deliberate indifference on behalf of the Defendants. As such, Defendants are entitled to summary judgment.

### D.   **Preliminary Injunction and Temporary Restraining Order**

Preliminary injunctive relief is extraordinary in nature and should issue in only limited circumstances. See American Tel. and Tel. Co. V. Winback and Conserve Program, Inc., 42 F.3d 1421, 1426-27 (3d Cir. 1994), cert. denied, 514 US. 1103 (1995). Moreover, issuance of such relief is at the discretion of the trial judge. Orson, Inc. v. Miramax Film, Corp., 836 F. Supp. 309, 311 (E.D. Pa. 1993). In determining whether to grant a motion seeking preliminary injunctive relief, courts in the Third Circuit consider the following four factors:

(1)   likelihood of success on the merits;
(2)   irreparable harm resulting from a denial of relief;
(3)   the harm to the non-moving party if relief is granted; and
(4)   the public interest.

United States v. Bell, 2003 WL 102610, *2 (M.D. Pa. 2003) (Conner, J.) (internal citations omitted). It is the moving party that bears the burden of satisfying these factors. Id. The standards for a temporary restraining order are the same as those for a preliminary injunction. Bieros v. Nicola, 857 F. Supp. 445, 446 (E.D. Pa. 1994).

Perhaps the most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted, the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered. See Continental Group, Inc. v. Amoco Chems. Corp., 614

F.2d 351, 356 (3d Cir. 1980). Irreparable injury is "potential harm which cannot be redressed by a legal or equitable remedy following a trial." Instant Air Freight, 882 F.2d at 801. A court may not grant preliminary injunctive relief unless "[t]he preliminary injunction [is] the only way of protecting the plaintiff from harm." Id. The relevant inquiry is whether the party moving for the injunctive relief is in danger of suffering the irreparable harm at the time the preliminary injunctive relief is to be issued. Id. Speculative injury does not constitute a showing of irreparable harm. Continental, 614 F.2d at 359; see also Public Serv. Co. v. West Newbury, 835 F.2d 380, 383 (1st Cir. 1987). "The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." Instant Air Freight, 882 F.2d at 801 (quoting Sampson v. Murray, 415 U.S. 61, 90 (1964)). Of course, a prisoner lacks standing to seek injunctive relief if he is no longer subject to the alleged conditions he attempts to challenge. See Weaver v. Wilcox, 650 F. 2d 22, 27 n. 13 (3d Cir. 1981) (finding that a prisoner's transfer from the prison moots claim for injunctive and declaratory relief with respect to prison conditions, but not claims for damages.)

Based on Plaintiff's failure to prevail on the merits of the instant civil rights action, Plaintiff's motions for a preliminary injunction and temporary restraining order will be denied

A separate Order will be issued.

Dated: February 14, 2012

_____
**United States District Judge**

-22-