# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

NORMAN N. SHELTON,                          :

                                            :

      **Plaintiff**                         CIVIL ACTION NO. 3:11-0368

                                            :

      **v**

                                            :     **(JUDGE MANNION)**

WARDEN BLEDSOE, <u>et</u> al.,

                                            :

      **Defendants**

## <u>MEMORANDUM</u>

Presently before the Court is Defendants' motion in limine to exclude evidence of previous lawsuits and complaints, including any settlements, administrative remedies, internal Bureau of Prisons complaints, federal complaints or other executive agency complaints filed against them or the United States, (Doc. 228); and Plaintiff's motions in limine to exclude evidence of Plaintiff's alleged prison misconduct, (Doc. 230), evidence of Plaintiff's other lawsuits, (Doc. 232); evidence of Plaintiff's criminal convictions, (Doc. 234), evidence of Plaintiff's religions, including portions of the videotape debriefing showing Plaintiff praying, (Doc. 236); evidence of other administrative grievances filed by Plaintiff, (Doc. 238); and to exclude video and other evidence of September 22, 2010 use of force incident, (Doc. 248).

For the following reasons, the Court will **GRANT** Defendants' motion in

limine and **GRANT, in part, and DENY, in part,** Plaintiff's motions in limine.

## I.   <u>BACKGROUND</u>

On February 25, 2011, Norman N. Shelton, an inmate confined in the United States Penitentiary, Lewisburg ("USP-Lewisburg"), Pennsylvania, filed the above captioned <u>Bivens</u>[1] action, pursuant to 28 U.S.C. §1331. Named as Defendants were thirty-two (32) employees of USP-Lewisburg. Shelton raises claims of deliberate indifference to his safety and excessive use of force with regard to events surrounding an alleged August 29, 2010 assault upon him by his cellmate, and claims regarding his resulting medical care. (Doc. 1, complaint). In addition, Shelton generally alleges racial discrimination by staff and complains of various forms of mistreatment, including "corporal punishment," the use of restraints, harassment, and being deprived of water, lights and sleep. Id.

Acting on a series of motions to amend/correct his complaint, the Court, by Order dated June 30, 2011, permitted Shelton an opportunity to file an amended complaint. (<u>See</u> Doc. 55). To that end, Shelton was provided with two copies of this Court's civil-rights complaint form. Id.

[1] Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 397 (1971).

On July 11, 2011, Shelton filed two completed civil-rights complaint forms with the Court, both captioned with the docket number in this case. (See Docs. 58, 60). Along with the complaints, Shelton filed a brief in support of his amended complaints. (Doc. 59).

On August 10, 2011, upon review of Shelton's amended complaint, the following Order was issued:

1. The Clerk of Court is directed to extract pages 1 - 4 from Plaintiff's first amended complaint (Doc. 58), consider them as the amended complaint of record, file and docket them as same.

2. The Clerk of Court is directed to return the remaining sixteen pages of the first amended complaint (Doc. 58) to the Plaintiff.

3. Plaintiff's amended complaint is permitted to proceed with respect to Defendants, Correctional Officers Raup and Whittaker, Lieutenants Heath and Galletta, and Medical Examiner Potter. The remainder of the Defendants are to be dismissed from the instant action.

4. The Clerk of Court is directed to serve Plaintiff's amended complaint on the five (5) Defendants named therein.

5. Plaintiff's second amended complaint (Doc. 60) is **STRICKEN** from the record as duplicative of the first three pages of Plaintiff's first amended complaint.

6. Defendants' motion for enlargement of time to respond to the amended complaint, (Doc. 61) is

**GRANTED**.

7.  Defendants may respond to the amended complaint within sixty (60) days after service of the amended complaint.

> 8.  Defendants' motion to dismiss and motion for summary judgment, directed at Plaintiff's original complaint, (Doc. 42) is **DISMISSED** as moot.

> 9.  Plaintiff's motion for default judgment (Doc. 50) and motion requesting issuance of subpoena (Doc. 62) are **DENIED**.

(Doc. 74, Order).

As a result of the Court's August 10, 2011 Order, the following claims contained in Plaintiff's amended complaint (Doc. 58) were permitted to proceed:

> On August 30, 2009, [Plaintiff] was "forced to go into a cell with a gang member against [his] will". The gang member and [Plaintiff] "told the officials that it would not work out between [them]".

> On cell rotation of August 30, 2009, "[Plaintiff] was placed in handcuffs and inmate Graham #11510-031 began assaulting [Plaintiff] with multiple punches and kicks to [his] face and body".

> SMU officials stood there and watch for a whole three minutes and did nothing to stop it. Once inmate stopped, C/O Raup, C/O Whittaker and Lt. Heath came into the cell and "slammed [Plaintiff] to the ground while [he] was cuffed behind [his] back, after they sprayed [him] in the face with gas".

> Defendant Lt. Heath, "act[ing] intentionally and purposefully place[d] her knee on the back of Plaintiff's neck, cutting off his breathing".

4

C/O Whittaker "slammed Plaintiff to the floor while Plaintiff was passively and handcuffed behind his back and Defendant Whittaker punched and kicked Plaintiff in his left side of his body."

C/O Raup "punched [and] kicked Plaintiff in his right side of his body" and "Plaintiff could not breath and yelled he could not get any air." The gas was "burning Plaintiff's skin on his face, neck and back and Defendant C/O Raup stated we want you to suffer, we don't care if you can breath."

Defendant Potter "witnesse[ed] Plaintiff's wounds that he sustained and the actual injury and the nature of his damages and refuse to give Plaintiff any medical care or medicine for the pain he was in."

Lt. Galletta "attack[ed] and assault[ed] Plaintiff out of view of the surveillance tv, punched and slamm[ed] Plaintiff up against the wall" and "placing [him] in restraints."

(Doc. 58, Amended Complaint). For relief, Plaintiff seeks compensatory and punitive damages for Defendants' "excessive use of force, denial of medical care" and "racial discrimination." Id.

By Memorandum and Order dated February 14, 2012, Defendants' motion for summary judgment was granted and the case was closed. (Docs. 136, 137).

On February 28, 2012, Plaintiff filed an appeal from the Court's Memorandum and Order to the United States Court of Appeals for the Third Circuit. (Doc. 141).

In an Opinion filed April 23, 2013, the Court of Appeals reversed

Plaintiff's excessive use of force claim and affirmed the remainder of the Court's February 14, 2012 Order. (Doc. 147, Opinion).[11] Thus, the only claim that remains for trial is Plaintiff's excessive use of force claim, alleging that Defendants Whittaker, Heath, Raup, and Galletta used excessive force in subduing Plaintiff Norman Shelton. Specifically, Plaintiff claims that on August 30, 2009, after his cellmate attacked him, Lieutenant Heath placed her knee on the back of Plaintiff's neck, cutting of his breathing; Officer Whitaker slammed him to the floor and punched and kicked him on the left side of his body; Officer Raup punched and kicked him on the right side of his body; and Lieutenant Galletta punched and kicked him up against the wall.

## II.    STANDARD OF REVIEW

The Federal Rules of Evidence govern the admissibility of evidence at trial. In considering motions in limine, "[t]he Federal Rules of Evidence can aptly be characterized as evidentiary rules of inclusion, which are designed to broadly permit fact-finders to consider pertinent factual information while searching for the truth." Univac Dental Co. v. Dentsply Int'l, Inc., 268 F.R.D. 190, 196 (M.D. Pa. 2010). All relevant evidence is admissible unless otherwise stated by the Constitution, statue or other Federal Rules. FED.R.EVID. 402; see also Daubert v. Merrell Dow Pharms., 509 U.S. 579,

---

[11]On November 3, 2016, the above captioned action was reassigned to the undersigned for trial.

587 (1993) (noting that the "[b]asic standard of relevance under Federal Rules of Evidence is a liberal one."). Under Rule 401, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED.R.EVID. 401. Evidence that is not relevant is not admissible. FED.R.EVID. 402.

Pursuant to Rule 403 of the Federal Rules of Evidence, the court may exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." FED.R.EVID. 403; see also Sprint/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379, 382 (2008); Coleman v. Home Depot Inc., 306 F.3d 1333, 1343–44 (3d Cir. 2002). The Third Circuit has cautioned that the exclusion of potentially relevant evidence pursuant to Rule 403 is an "extreme measure" at the pre-trial stage. Hines v. Consol. Rail Corp., 926 F.2d 262, 274 (3d Cir.1991). Evidence should rarely be excluded in limine pursuant to Rule 403 because "[a] court cannot fairly ascertain the potential relevance of evidence for Rule 403 purposes until it has a full record relevant to the putatively objectionable evidence." In re Paoli R.R. Yard PCB Litig., 916 F.2d 829, 859 (3d Cir.1999).

Pursuant to Rule 404 of the Federal Rules of Evidence, character

evidence is generally not admissible to prove conduct. In particular, "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." FED.R.EVID. 404(b). Other crimes, wrongs or acts are admissible, however, to prove motive, opportunity, intent, preparation, and plan. Id.

In a closely related vein, but contrary to the general rule on character evidence, evidence of habit or routine practice is admissible to prove that the conduct of a person on a particular occasion is in conformity with the habit or routine practice. FED.R.EVID. 406; see also FED.R.EVID. 406 advisory committee notes (1972) ("Character and habit are close akin."). Habit is described as one's regular response to a repeated, specific situation. See Becker v. ARCO Chemical Co., 207 F.3d 176, 204 (3d Cir.2000) (quoting FED.R.EVID. 406 advisory committee notes (1972)); see also id. ('The doing of the habitual acts may become semiautomatic.').

Finally, Rule 609 of the Federal Rules of Evidence governs the admissibility of a witness's prior convictions for impeachment purposes. Pursuant to Rule 609(a), for purposes of attacking the character for truthfulness of a witness, evidence that the witness has been convicted of a felony "shall be admitted, subject to Rule 403 ... if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused." FED.R.EVID. 609(a)(1). In analyzing conviction evidence, the

court must engage in a "genuine balancing" of probative value and prejudicial effect. Tabron v. Grace, 898 F.Supp. 293, 297 (M.D.Pa.1995). Important considerations include "the nature of the convictions, the time that has elapsed since conviction, the importance of credibility to the underlying claim, and the potential for prejudice from admitting the convictions." Id. at 295.

A conviction more than ten years old (measured from the date of conviction or release from confinement for the conviction, whichever is later), is generally not admissible "unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantial outweighs its prejudicial effect." FED.R.EVID. 609(b). Thus, convictions over ten years old are only to be admitted in exceptional circumstances and the Rule 403 balancing is reversed. Whereas under Rule 403 unfair prejudice must substantially outweigh the evidence's probative value, for convictions over ten years old, the probative value of the conviction must substantially outweigh the prejudicial effect.


## III.    DISCUSSION

### A.    Defendants' motion in limine

Defendants seek to exclude evidence of previous complaints and lawsuits, including any settlements, administrative remedies, internal Bureau of Prison complaints, federal complaints or other executive agency complaints

9

filed against them or the United States. (Doc. 229). Defendants believe that such evidence constitutes improper character evidence under FED.R.EVID. 404; is irrelevant and prejudicial; and would cause undue delay in the proceedings. Id.

While Plaintiff agrees to exclude evidence that Defendants provided during discovery regarding prior lawsuits and administrative remedies, Plaintiff opposes Defendants' motion to the extent it seeks to exclude "yet to be identified evidence of excessive force lawsuits and administrative complaints against Defendants that were not provided by Defendants during discovery." (See Doc. 247). Plaintiff identifies the evidence sought through discovery is as follows:

> 1.  The OIA investigative reports as to Defendants Whittaker, Galletta, and Health produced to Plaintiff on April 10, 2017 (DEF-00000508 to DEF-00000541), which Defendants characterized as "completely irrelevant to the claims and defenses in this case" at the time of production. Ex. A (Letter from Michael Butler, AUSA, to Rose Marie Wong, Esq., dated Apr. 10, 2017).

> 2.  The evidence of previous administrative complaints and lawsuits filed against Defendants disclosed by Defendants during their depositions on March 7-8, 2017, and March 22-23, 2017.

Id. Plaintiff, however, is opposed to a broad exclusion of unidentified previous complaints or lawsuits. Id.

Defendants reply, stating that no excessive force lawsuits were provided during discovery, because no court has ever granted summary judgment to any inmate against any of the named Defendants. (See Doc. 250). As such, there are no applicable cases to satisfy the discovery request. Morever, Defendants indicate that, as a showing of good faith, they agreed to provide Plaintiff with five years of excessive force claims filed. Id. Thus, to the extent Plaintiff seeks evidence of excessive force claims or lawsuits beyond the five years, such request surpasses the agreement between counsel. Id.

After careful review of the motion and Plaintiff's response thereto, the Court agrees that the following evidence should be excluded: evidence of all previous lawsuits and complaints, including any settlements, administrative remedies, internal Bureau of Prison complaints, federal complaints or other executive agency complaints filed against them or the United States, that exceeds the five year agreement between counsel. Such evidence is irrelevant under FED.R.EVID. 401 and 402 to Plaintiff's remaining claim of excessive force because it does not have a tendency to make the existence of any fact of consequence more or less probable than it would be without the evidence. Even if such evidence were minimally relevant, that probative value would be substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, and wasting time. See Fed. R. Evid. 403. Thus, Defendants' motion is **GRANTED**.

## B. Plaintiff's motions in limine

### 1. Evidence of Plaintiff's Alleged Prison Misconduct

Plaintiff seeks to exclude from introducing into evidence, questioning, or argument, other acts of alleged misconduct by Plaintiff, including disciplinary charges in connection with such misconduct, other than any alleged misconduct during the August 30, 2009 incident at issue in this case. (Doc. 231). Plaintiff believes that such evidence violates Fed. R. Evid. 404(b) and 403, and is irrelevant because Plaintiff's alleged misconduct, and any discipline resulting from those allegations, have no bearing on whether he was the victim of excessive force at the hands of the Defendants on August 30, 2009. Id.

Defendants contend that Plaintiff's disciplinary record demonstrates that staff were dealing with a violent individual who they had to approach with care. (Doc. 246). Specifically, because there is a dispute as to why Defendants initially brought Plaintiff to the ground. Id. Plaintiff claims that he was passive, while Defendants will testify that this was the SMU, and Plaintiff was there because he was a violent offender and they knew SMU inmates had lengthy disciplinary histories. Id. Defendants believed Plaintiff's acts of kicking and approaching the cell door were violent acts of a violent prisoner and his actions of not going down and rocking back and forth were aggressive. Id. In addition, Defendants argue that Shelton's knowledge of the

officer's responses based on his previous disciplinary history demonstrate that he would be gassed or physically restrained when he acted accordingly. Id.

The Court finds that Defendants' knowledge of Plaintiff's past behavior may be relevant to determine whether force used in this case "was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973). Among the factors considered in determining whether force was properly applied is "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known." Whitley v. Albers, 475 U.S. 312, 321 (1986). Considering this evidence in the context of the claims brought in this case, if the individual corrections officers were aware of the Plaintiff's prior misconduct, propensity for violence, or disciplinary issues while incarcerated, and this information helped to form a basis to assess the threat level that the plaintiff presented, then "knowledge of such history would be relevant to the inquiry as to whether the force used against plaintiff was reasonable under the circumstances." Smith v. City of Philadelphia, Civ. A. No. 06-4312, 2009 WL 3353148, at *2 (E.D. Pa. Oct. 19, 2009) (claims of excessive force against corrections officers) (citing Virgin Islands v. Carino, 631 F.2d 226, 229 (3d Cir. 1980) ("If it can be established that the accused knew at the time of the alleged crime of prior violent acts by the victim, such evidence is relevant as

tending to show a reasonable apprehension on the part of the accused.")).

Therefore, Plaintiff's motion will be **GRANTED, in part,** and **DENIED, in part**.

Limited testimony on these matters will be permitted for this purpose to the extent that these matters were known to the officers and informed their judgment regarding the quantum of force needed in this case. However, the Court finds that any use of the disciplinary record, outside of showing Defendants knowledge and how that knowledge informed their decisions regarding the use of force, is inadmissible character evidence, in violation of FED. R. EVID. 404(b).

### 2. Evidence of Plaintiff's Other Lawsuits

Plaintiff argues that evidence of his other lawsuits would constitute improper character evidence under Rule 404(a)(1) and, therefore, should be excluded. (Doc. 233). Additionally, Plaintiff believes that because his other lawsuits are not relevant to any of the issues in this case (i.e., whether Plaintiff was the victim of excessive force on August 30, 2009), their admission is also barred by Rules 401 and 402. Id. Finally, introduction of his other suits would also present a danger of unfair prejudice under Rule 403 because they might paint Plaintiff as a litigious person. Id.

Defendants argue that because Plaintiff claims that he has physical and emotional injuries, and that he lacks trust of officers, any contact with officers in which he claims that they injured him would be relevant to damages

because it may mitigate against his claim or provide evidence that his lack of trust or physical injuries has a different proximate cause. (Doc. 245).

Moreover, Defendants claim that Plaintiff was found to have lied or misrepresented facts to a court in Shelton v. Rohrs, 406 F. App'x 340, 340 (2010), denied it at his deposition and was not forthright with his complaints in the instant matter. Id. Defendants believe that such actions go directly to Plaintiff's credibility, and they should be allowed to explore Plaintiff's lack of candor under oath as to this case and to the other courts. Id.

The court agrees with Plaintiff that the evidence is irrelevant if offered to prove motive.

Federal Rule of Evidence 402 excludes irrelevant evidence from admission at trial. Relevant evidence "means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 402. Here, Plaintiff's motivation for his actions giving rise to the suit, or for bringing the suit, are irrelevant to the issue of whether Defendants used excessive force on August 30, 2009. Accordingly, evidence of Plaintiff's past lawsuits is irrelevant if offered by Defendants to prove Plaintiff's motive, and shall be inadmissible at trial for that purpose.

The Court also finds that evidence of Plaintiff's prior lawsuits is not relevant to negate Plaintiff's claim for emotional damages. The Defendants'

arguments to the contrary simply lack credence. Accordingly, Defendants may not introduce evidence of Plaintiff's other lawsuits. However, to the extent that statements made during other lawsuits were found to be untrue, this goes to Plaintiff's credibility and if there is a good foundation to cross-examine Plaintiff on such statements made in other lawsuits, the Defendants may use such evidence. As such, Plaintiff's motion is **GRANTED in part.**

### 3. Evidence of Plaintiff's Criminal Convictions

On July 13, 1993, Plaintiff was sentenced to a term of imprisonment of 322 months, after having been convicted of conspiracy, bank robbery, armed bank robbery, and carrying a firearm during a crime of violence. (Doc. 235-1, Plaintiff's criminal docket). He was serving this sentence at the time he filed the above captioned action on August 30, 2009. Id. He was released from custody on April 14, 2017.[2]

Plaintiff seeks to exclude evidence and inquiry about his prior criminal convictions, including inquiry on cross-examination, under Rules 402, 403, 404, 608 and 609 of the Federal Rules of Evidence. (Doc. 235). Plaintiff argues that his convictions have no bearing on whether he was the victim of excessive force while imprisoned at USP-Lewisburg on August 30, 2009 and, therefore, are irrelevant. Id. In addition, Plaintiff claims that there is a substantial danger that evidence relating to his prior convictions would be

_____

[2]See https://www.bop.gov/inmateloc/.

unfairly prejudicial to him and confuse the jury on the relevant issues in this Bivens civil rights case. Id.

Defendants counter that Plaintiff's convictions are relevant to Defendants' state of mind. (Doc. 244). Specifically, they claim that while Plaintiff maintains that he was passive, Defendants will testify that they believed Plaintiff's actions of kicking and approaching the cell door were violent acts of a violent prisoner, and his actions of not going down and rocking back and forth were acts of aggression by an inmate housed in the SMU, where violent offenders are located. Id.

Upon consideration of the parties' competing positions on the relevance and potential for prejudice resulting from Plaintiff's impeachment through his prior convictions, and mindful of the Third Circuit's cautious approach to Rule 403 challenges, the Court finds that Plaintiff's motion to wholly exclude evidence of the his convictions should be denied for at least two reasons. First, Rule 609(a) makes clear that evidence of felony convictions is indeed relevant to a jury's effective evaluation of witness credibility. Rule 609(a) states that the evidence of a witness's felony conviction "shall be admitted" except for those instances where Rule 403 or the time limit of Rule 609(b) demands otherwise. Rule 609 is based upon the "common sense proposition" that an individual who has "transgressed society's norms by committing a felony is less likely than most to be deterred from lying under oath." See

*Walden v. Georgia-Pacific Corp.*, 126 F.3d 506, 523 (3d Cir. 1997). Its

purpose is to aid the jury in assessing the credibility of a witness. Id. In this

case, Plaintiff's credibility will play a decisive role in the jury's decision-making

process. In addition to Plaintiff's credibility, is Defendants' state of mind.

The Plaintiff has brought an excessive force claim against the

Defendants arising out of an August 30, 2009, incident in the prison. The

keystone to analysis of an Eighth Amendment excessive force claim entails

issues of motivation–whether force was applied in a good-faith effort to

maintain or restore discipline, or maliciously and sadistically to cause harm.

*Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). Therefore, excessive force

claims often turn on factual disputes which cannot be resolved as a matter of

law. *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000). Consistent with this

fact-bound approach to litigation of these claims, there are several factual

considerations that a jury must examine in determining whether a correctional

officer has used excessive force in violation of the Eighth Amendment,

including: "(1) 'the need for the application of force'; (2) 'the relationship

between the need and the amount of force that was used'; (3) 'the extent of

injury inflicted'; (4) 'the extent of the threat to the safety of staff and inmates,

as reasonably perceived by responsible officials on the basis of the facts

known to them'; and (5) 'any efforts made to temper the severity of a forceful

response.' " Id. at 106.

When considering such claims, the reasonableness of a particular use of force is often dependent upon factual context and must be "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham v. Connor, 490 U.S. 386, 396-7 (1989). Moreover, in the context of prison excessive force claims, in determining "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm," Hudson v. McMillian, 503 U.S. 1, 6-7 (1992), "even if we concede [that an inmate] has established at most that prison officials over-reacted to the disturbance that he caused. . . , any such over-reaction would still fall short of supporting a finding that prison officials acted 'maliciously and sadistically to cause harm.'" Fuentes v. Wagner, 206 F.3d 335, 346 (3d Cir. 2000).

Given this fact-bound approach, which examines "the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them," Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000), an inmate's known propensity for violence would be pertinent to a determination of the quantum of force needed in a correctional setting to restore or maintain order. Thus, this evidence is relevant to the issues in this case since "relevant evidence," is defined in Federal Rule of Evidence 401 as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action

more probable or less probable than it would be without the evidence."
Considering this evidence in the context of the claims brought in this case, if
the individual corrections officers were aware of the Plaintiff's prior criminal
conduct and propensity for violence while incarcerated, and this information
helped to form a basis to assess the threat level that the Plaintiff presented,
then "knowledge of such history would be relevant to the inquiry as to whether
the force used against plaintiff was reasonable under the circumstances."
Smith v. City of Philadelphia, Civ. A. No. 06-4312, 2009 WL 3353148, at \*2
(E.D. Pa. Oct. 19, 2009) (claims of excessive force against corrections
officers) (citing Virgin Islands v. Carino, 631 F.2d 226, 229 (3d Cir. 1980) ("If
it can be established that the accused knew at the time of the alleged crime
of prior violent acts by the victim, such evidence is relevant as tending to
show a reasonable apprehension on the part of the accused.")).

However, to the extent this evidence is offered for purposes found to be
permissible, since it informs "the extent of the threat to the safety of staff and
inmates, as reasonably perceived by responsible officials on the basis of the
facts known to them," Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000,) it will
be admissible subject to the limitations imposed by Rules 402 and 403 of the
Federal Rules of Evidence. This Rule 403 balancing of probative value and
prejudicial impact also cautions against permitting detailed testimony in this
case regarding the specifics of Shelton's prior convictions, an approach

endorsed in the past by this court. See " Womack v. Smith, 1:06-CV-2348, 2012 WL 1245752 (M.D. Pa. Apr. 13, 2012). Thus, in assessing the degree of force that the defendants perceived was necessary on August 30, 2009, "Defendants may testify to their knowledge that [Shelton] was convicted of crimes of violence and the length of his sentences," Womack v. Smith, 1:06-CV-2348, 2012 WL 1245752 (M.D. Pa. Apr. 13, 2012), but Defendants may not describe the specific nature of those offenses, unless Plaintiff opens the door on direct examination. Thus the Court notes that this ruling is without prejudice to Defendants' right to revisit the issue upon the conclusion of Shelton's trial testimony. As such, Plaintiff's motion is **GRANTED in part**, and **DENIED in part**.

### 4. Evidence of Plaintiff's Religion

Plaintiff seeks to exclude evidence and inquiry about his religious background under Rules 402, 403, and 610 of the Federal Rules of Evidence. (Doc. 237). Specifically, Plaintiff argues that his religion played no role in the excessive force claim that remains in this case, he does not allege that Defendants were motivated by his religious background when they used excessive force upon him, and given the anti-Muslim political climate that has emerged since September 11, 2001, and the attacks carried out by terrorist groups such as ISIS, there is a substantial risk that reference to Plaintiff's Muslim religious beliefs may lead to unfair prejudice with members of the jury.

Id.

In response, Defendants concede that they would not be using Plaintiff's Islamic faith, in contravention to FED.R.EVID 601, to impeach him because he simply has that faith. (Doc. 242). Nor would they inflame a jury with any witness's religion, causing unfair prejudice under FED.R.EVID. 403. Id. Rather, Defendants argue that evidence of Plaintiff's religion is relevant because Plaintiff has made his religion an issue in his complaint and other related court filings. Id.

In his initial complaint, Plaintiff claims that Defendants placed him in a cell with a gang member because he was a Muslim. (Doc. 1 at 7). Shelton references this claim in a separate class action that he filed at Shelton v. Bledsoe, 3:11-cv-1618 (M.D. Pa), where he claims that he is a Muslim, officers know that gang members attack Muslims, and the officers-- Defendants in this case-- placed him in a cell with a gang member, the very same gang member who attacked him on August 30, 2009, to cause him harm. (See Doc. 242-1 at 16-17). Plaintiff later, however, claims that his religion in no way motivated Defendants' actions on August 30, 2009, (see Doc. 237 at 3).

The Court finds that Defendants are not entitled to present evidence of Plaintiff's religion on their direct case. However, they may be entitled to impeach Plaintiff on this issue if the Plaintiff "opens the door" during his

presentation of evidence.

To the extent that Plaintiff's motion seeks the exclusion of portions of a videotape in which Plaintiff was captured on video camera, praying, while being held in a holding cell immediately after the use of force incident on August 30, 2009, (see Doc. 237 at 1-2), the Court agrees that it sees no relevance to that evidence, and it will be excluded at this time. Plaintiff's motion, therefore, is **GRANTED**.

### 5. Evidence of other administrative grievances filed by Plaintiff

Plaintiff moves under Rules 402, 403, and 404 of the Federal Rules of Evidence to preclude Defendants from presenting evidence concerning administrative grievances filed by Plaintiff that are unrelated to the August 30, 2009 use of force incident. (Doc. 243). Specifically, Plaintiff argues that such evidence has no relevance, and if used, may portray Plaintiff as a litigious, confrontational or otherwise unstable person. Id. Additionally, Plaintiff argues that if such information was used to show a tendency to file fraudulent or frivolous claims; or to show bias against Defendants or USP-Lewisburg staff generally, such evidence constitutes inadmissible character evidence and presents a substantial danger of unfair prejudice. Id. Finally, Plaintiff contends that presentation of his other grievances would result in a series of mini-trials on collateral issues, which would waste the jury's time and cause confusion. Id.

Defendants argue that the use of Plaintiff's prior grievances would not be used to show Plaintiff's litigiousness, and that his litigiousness shows bias, but would rather be used to show the jury that Plaintiff holds certain opinions with respect to USP-Lewisburg officers, which creates a relevant bias. (Doc. 243). Defendants rely on the United States Supreme Court's holding in United States v. Abel, 469 U.S. 45, 46 (1984) for support that a witness may be subject to cross examination as to bias. Id. This Court disagrees.

Rule 401 defines as "relevant evidence" evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Rule 402 provides that all relevant evidence is admissible, except as otherwise provided by the United States Constitution, by Act of Congress, or by applicable rule. A successful showing of bias on the part of a witness would have a tendency to make the facts to which he testified less probable in the eyes of the jury than it would be without such testimony. Abel, 469 U.S. at 46. However, all the grievances filed by the Plaintiff occurred after this incident. As such, Defendants may not introduce evidence of Plaintiff's administrative remedies as they are not relevant to the issue of whether the Defendants used excessive force on August 30, 2009. Thus, Plaintiff's motion will be **GRANTED**.

**6. Video and other Evidence of September 22, 2010 use of force**

**incident.**

Plaintiff seeks to preclude Defendants from presenting video and other evidence in connection with a September 22, 2010 calculated use of force incident involving Plaintiff and his then-cellmate, Damon Johnson. (Doc. 249). Plaintiff argues that this incident, which occurred more than a year after the incident at issue in this case, has nothing to do with whether Defendants assaulted Plaintiff on August 30, 2009. Id.

Defendants do not oppose this motion, but reserve the right to use the video to the extent it may be needed for impeachment or rebuttal evidence. (Doc. 251).  As such, Plaintiff's motion will be **GRANTED**.

## IV.    CONCLUSION

For the above reasons, the Court will **GRANT** Defendants' motion in limine, and will **GRANT, in part,** and **DENY**, **in part**, Plaintiff's motions in limine. An appropriate order will follow.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: July 7, 2017**
O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2011 MEMORANDA\11-0368-02.wpd